**In re CHATEAUGAY CORPORATION, Reomar, Inc., The LTV Corporation, et al.**

**John T. ADKINSON, et al., Claimants–Appellants,**

**v.**

**The LTV CORPORATION, LTV Steel Company, Inc. and Gulf States Steel, Debtors–Appellees.**

No. 93 Civ. 5231 (PKL).

United States District Court, S.D. New York.

March 8, 1994.

Cooper, Mitch, Crawford, Kuykendall & Whatley, Birmingham, AL (Joe R. Whatley, of counsel), for claimants-appellants.

Mary T. Cushing, LTV Steel Co., Inc., Cleveland, OH, Reed Smith Shaw & McClay, Pittsburgh, PA (John C. Unkovic, of counsel), for debtors-appellees.

LEISURE, District Judge.

This is an appeal from an Opinion and Order (the "Opinion") of the Honorable Burton J. Lifland, United States Bankruptcy Judge for the Southern District of New York, dated May 11, 1993 (the "Bankruptcy Court"). For the reasons stated below, the Bankruptcy Court's Opinion is hereby affirmed.

## BACKGROUND

On September 28, 1983, appellant LTV Corporation ("LTV") and the Republic Steel Corporation ("Republic") entered into an Amended Agreement and Plan of Merger ("Merger Agreement"). The Merger Agreement set forth the terms of a future merger between these companies and included a provision that the Republic's pension plan (the "Republic Plan") would not be amended for a period of one year following the effective date of the merger. Section 3.19(a)(3) of the Republic Plan provided for an unaccrued, nonvested severance benefit for employees with ten years of continuous service who were placed on indefinite layoff.

On February 15, 1984, the United States Department of Justice (the "Justice Department") filed an action to enjoin the merger of LTV and Republic. The Justice Department and LTV, however, reached an agreement allowing the merger to go forward on the condition that LTV would sell Republic's Gadsen manufacturing plant, and that, if the sale was not effected by December 1, 1984, a trustee would be appointed for that purpose. On June 29, 1984, LTV consummated the acquisition of Republic. LTV failed to sell the Gadsen plant by the December 1, 1984 deadline so Judge John H. Pratt, United States District Judge for the District of Co-

lumbia, appointed a trustee (the "Trustee") to sell the plant.

On July 1, 1985, more than a year after the merger, LTV amended the Republic Plan by, *inter alia,* deleting Section 3.19(a)(3), which provided for severance benefits. This benefit was replaced with a unified severance plan for LTV employees (the "LTV Steel Termination Plan").

The Trustee was unable to find a purchaser until late 1985. Moreover, this purchaser's proposal entailed the termination of all employees at the plant. LTV opposed the recommendation but Judge Pratt issued an Order authorizing the sale and termination to take place on January 31, 1986. The Court-ordered termination precluded entitlement to benefits under the LTV Steel Termination Plan. However, LTV adopted a transition policy that salaried employees at the Gadsen plant would be treated as if they were eligible for benefits under the LTV Steel Termination Plan. The sale was effected on January 31, 1986 and the salaried employees were terminated and compensated, to the extent applicable, under the LTV Steel Termination Plan.

In November 1986, the appellants ("Claimants") filed suit in the United States District Court for the Northern District of Alabama, alleging that a variety of individuals and entities were liable to them for benefits in connection with the termination of their employment. This litigation was dismissed without prejudice pursuant to an agreement of the parties. In 1987, Claimants filed claims for benefits in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). On February 12, 1993, the appellees ("Debtors") filed a motion to expunge certain claims and to amend others (the "Motion to Expunge"). The Bankruptcy Court scheduled a hearing on the matter for April 22, 1993 (the "Hearing"). On April 14, 1993, Claimants moved to withdraw their claims and filed a response to LTV's Motion to Expunge. On April 22, 1993 the Hearing was held on Debtors' and Claimants' motions. The Court denied Claimants' motion to withdraw their claims and held a hearing on the merits of these claims. On May 11, 1993 the Bankruptcy Court issued a written opinion granting Debtors' Motion to Expunge these claims.

Claimants then brought this appeal contending (1) that the Bankruptcy Court abused its discretion in denying Claimants leave to withdraw their claims and (2) that the Bankruptcy Court improperly granted Debtors' Motion to Expunge without permitting oral testimony and other evidence that Claimants sought to introduce at the Hearing.

## DISCUSSION

### I. THE DENIAL OF CLAIMANTS' MOTION TO WITHDRAW THEIR CLAIMS

Bankruptcy Rule 3006 provides that "[i]f after a creditor has filed a proof of claim an objection is filed thereto ... the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession." The Advisory Committee Note to Rule 3006 explains that the rule "vests discretion in the court to grant, deny, or condition the request of a creditor to withdraw" the disputed claim. The Note also explains that Rule 3006 "recognizes the applicability of the considerations underlying Rule 41(a) F.R.Civ.P. to the withdrawal of a claim after it has been put in issue by an objection."

■ Voluntary dismissal without prejudice pursuant to Fed.R.Civ.P. 41(a) is not a matter of right, *Zagano v. Fordham University,* 900 F.2d 12, 14 (2d Cir.), *cert. denied,* 498 U.S. 899, 111 S.Ct. 255, 112 L.Ed.2d 213 (1990), but rather is within the discretion of the Court. *SEC v. American Bd. of Trade,* 750 F.Supp. 100, 105 (S.D.N.Y.1990). Factors relevant to the consideration of whether to grant a motion to dismiss without prejudice include "plaintiff's diligence in bringing the motion; any 'undue vexatiousness' on the plaintiff's part; the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; the duplicative expense of relitigation; and the adequacy of plaintiff's explanation for the need to dismiss." *Zagano,* 900 F.2d at 14.

■ In the instant case, Claimants assert that it was unfair for Debtors to object to

their claims prior to proposing a plan of reorganization. If Debtors had first proposed the plan of reorganization, they argue, Claimants would have been able to consider whether they wished to withdraw their claims as of right based on the proposed plan. That such a choice would have been desirable to Claimants is evident. However, Claimants have not established that they had a right to such a choice. Rather, the Court concludes that permitting the Claimants to withdraw their claims would have been prejudicial to Debtors. *See* 8 *Collier on Bankruptcy*, § 3006.01 (15th ed. 1987) ("[O]nce a claim is objected to, the claim should be heard by the bankruptcy court. Withdrawal of the claim will not necessarily eliminate its impact on the debtor."); *In re Federated Department Stores, Inc.*, 135 B.R. 950, 952 (Bankruptcy S.D.Ohio 1992) (denying withdrawal of claim by IRS because timely resolution of claim was important to reorganization efforts). Thus, the Bankruptcy Court acted within its discretion in denying Claimants leave to withdraw their claims.

## II. GRANTING OF THE MOTION TO EXPUNGE

Claimants assert that the Bankruptcy Court improperly granted the Debtors' Motion to Expunge without permitting Claimants to present oral testimony at the April 22 Hearing.

At the Hearing, Claimants attempted to introduce certain documents and to present oral testimony by George Farragher. The Bankruptcy Court refused to permit the introduction of this evidence, stating that he believed that the documents submitted by the parties in their motion papers were sufficient. Appendix to the Appellants' Brief ("Appendix") at 585. However, the Court permitted Claimants to make an offer of proof, which they proceeded to do.

On appeal, Claimants contend that the testimony they sought to introduce would have been relevant to two theories of recovery. First, defendants argue "the appellees were ERISA fiduciaries who not only failed to comply with their affirmative duty to provide beneficiaries with correct information about their benefits but also affirmatively misstated the nature of those benefits." Brief of Appellants at 27. However, the

Claimants nowhere in their brief specify the nature of these misstatements. To the extent that the Claimants seek to argue that they were misinformed regarding the possibility that their benefits could be amended to decrease their termination benefits, their claim is without merit. When the officers of a corporation amend a pension plan, they act "on behalf of [the] corporate employer and not as Plan fiduciaries." *Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1417 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). Accordingly, such a decision to amend or terminate a plan is "unconstrained by the fiduciary duties that ERISA imposes on plan administration." *Hozier v. Midwest Fasteners Inc.*, 908 F.2d 1155, 1162 (3d Cir.1990). Thus, to the extent that officers of the appellant made statements concerning future amendments to the termination benefits provisions, they did not make these statements as fiduciaries of the plan and these statements therefore cannot give rise to a claim for breach of fiduciary duties.

The second argument Claimants make is that "the Bankruptcy Court refused to consider evidence on the issue of whether the appellees were barred or estopped from changing the benefits that the appellants had earned." Appellants' Brief at 26. The Claimants cite to *Lee v. Burkhart*, 991 F.2d 1004 (2d Cir.1993), in which the Second Circuit stated that it had previously "implicitly . . . recognized a cause of action for equitable or promissory estoppel under ERISA." *Id.* at 1008. Claimants contend that they sought to introduce evidence in support of such a theory that they had been promised by officials of Republic that their supplemental allowance benefits would not be taken away.

This Court finds nothing in the record, however, to suggest Claimants ever argued to the Bankruptcy Court a theory of equitable or promissory estoppel. The Claimants presented two arguments in their motion papers and in oral argument. The first of these theories, addressed above, was that officers of Creditors violated their fiduciary duties to the Claimants. The second of these theories was that the consent decree arising out of the antitrust litigation constituted an "effective amendment of the [M]erger [A]greement." Appendix at 588. The Merg-

er Agreement originally provided that the Republic Plan would not be amended for one year following the effective date of merger. Claimants contend that the consent decree extended this guarantee pending the sale of the Gadsen facility.

 The Claimants appear to have abandoned their "effective amendment" theory on appeal. Instead Claimants argue strenuously their theory of equitable or promissory estoppel. However, the general rule is that a court will not consider issues on appeal that are not raised below. *Terkildsen v. Waters*, 481 F.2d 201, 204 (2d Cir.1973); *Fortunato v. Ford Motor Company*, 464 F.2d 962, 967 (2d Cir.) *cert. denied*, 409 U.S. 1038, 93 S.Ct. 517, 34 L.Ed.2d 487 (1972) (holding that a court will not "permit a party to allege on appeal what it failed to claim to the trial court"); *Ansul Company v. Uniroyal, Inc.*, 448 F.2d 872, 886 (2d Cir.), *cert. denied*, 404 U.S. 1018, 92 S.Ct. 680, 30 L.Ed.2d 666 (1972). The record before this Court gives no indication that Claimants argued a theory of equitable or promissory estoppel before the Bankruptcy Court. Nowhere in either the oral argument before the Bankruptcy Court nor in the motion papers presented to the Bankruptcy Court is the term estoppel even used. Neither did the Claimants at that stage cite to any case law, as they do now, that supports their estoppel theory.

Since the rule against considering arguments not presented below is not an absolute one, the Court may exercise its discretion to consider such arguments with due regard to orderly procedure and fairness to the parties. *North American Leisure Corp v. A & B Duplicators, Ltd.*, 468 F.2d 695, 699 (2d Cir. 1972). However, the Court concludes that it may not in fairness consider Claimants' newfound arguments. When the Bankruptcy Court denied Claimants' motion to withdraw their claims at the April 22 Hearing, Claimants sought an adjournment of the Motion to Expunge. This adjournment was denied by the Bankruptcy Court, which commented as follows:

> [T]here has been an abundance of time with respect to the issues that are on the table. Your responsive pleading is essentially in the alternative, anticipating a ruling in one fashion or another [on Claimants' motion to withdraw their claims], and

addressing the matter depending upon how that ruling would come out.

> Now we are in the middle of conducting a hearing and having had the benefit of a ruling requested it's inappropriate to seek an adjournment at this point in time.

Appendix at 583–84. The Claimants nowhere contest the propriety of the Bankruptcy Court's refusal to grant their request for an adjournment, but their attempt to advance arguments not made at the time of the Hearing would in practice work an evasion of that ruling.

It would not only be unfair to Debtors to deviate from the normal rule that an appellate court will not consider new issues on appeal, but would also threaten to frustrate the bankruptcy process. Modern bankruptcy cases are of enormous complexity and the bankruptcy courts that are charged with supervising them must be able to impose reasonable deadlines. Thus, it is particularly appropriate in this context that the Claimants not be permitted to raise new issues on appeal.

 Finally, even were this Court to conclude that it could fairly be said that the issue of promissory estoppel was before the Bankruptcy Court, Claimants did not meet their obligation to make an offer of proof that effectively made "known the substance of the evidence" they wished to present. *See* Fed.R.Evidence 103(a)(2). *See Fortunato*, 464 F.2d at 967 (where significance of excluded evidence is not obvious, party must have made offer of proof in order to appeal exclusion); *Marrone v. United States*, 355 F.2d 238, 241 (2d Cir.1966) (same). In the instant case, the Claimants did make an offer of proof, but it was inadequate. It did not contain a single explicit reference to the testimony that Mr. Farragher was to give. Rather the attorney for Claimants presented a rambling narration of their allegations at the end of which he professed that "if there were complete discovery there would be many more facts that would go to these questions." Appendix at 590. Moreover, even with the benefit of hindsight, the evidence Claimants proffered did not appear to relate to a theory of promissory or equitable estoppel, but rather to Claimants' "effective amendment" theory. Thus, Claimants did not meet their obligation to make an effective

offer of proof pursuant to Fed.R.Evidence 103(a)(2).

Accordingly, the Court concludes that the Bankruptcy Court properly denied the Claimants the opportunity to present evidence at the April 22 Hearing since this evidence, as proffered, would not have supported any theory that was presented to the Court.[1]

## CONCLUSION

For the reasons stated above, the Bankruptcy Court's Opinion is hereby affirmed. The appeal is dismissed.

**SO ORDERED**

---

1. Debtors contend that their Motion to Expunge was in effect a motion for summary judgment and that Claimants were therefore not entitled to introduce oral testimony at the hearing but rather were required to attach affidavits or deposition testimony to their motion papers. The Court has assumed, *arguendo*, that the Claimants were entitled to present such oral testimony at the hearing if relevant, but that the Bankruptcy Court properly excluded the testimony as irrelevant.