In re IH 1, INC., et al., Debtors.

George L. Miller, Chapter 7 Trustee, Plaintiff,

v.

Sun Capital Partners, Inc., et al., Defendants.

Bankruptcy No. 09–10982 (PJW).
Adversary No. 10–52279 (PJW).

United States Bankruptcy Court, D. Delaware.

Jan. 25, 2011.

Thaddeus Weaver, Dilworth Paxson LLP, Wilmington, DE, Maura Fay McIlvain, Dilworth Paxson LLP, Philadelphia, PA, for Plaintiff.

John F. Hartmann, P.C., Michael A. Duffy, Kirkland & Ellis LLP, Chicago, IL, Daniel J. DeFranceschi, Drew G. Sloan, Richards, Layton & Finger, P.A., Wilmington, DE, for Defendants.

## MEMORANDUM OPINION

WALSH, Bankruptcy Judge.

This opinion is with respect to the motion of George L. Miller, as chapter 7 trustee ("Trustee") of IH 1, Inc., *et al.*, to disqualify the law firm of Kirkland & Ellis LLP ("Kirkland") from representing certain of the Defendants in the instant adversary proceeding. (Doc. # 43.) The Complaint identifies eight company Defendants and 14 individual Defendants. Kirkland represents all eight of the company Defendants and 12 of the 14 individual Defendants. Two of the Defendants, Timothy R.J. Stubbs and Patrick Lawlor, are not represented by Kirkland. For the reasons discussed below, I will deny the motion as to Kirkland's representation of six company Defendants; and I will grant the motion as to the other two company Defendants; and I will grant the motion as to the individual Defendants.

## Background

On September 16, 2005, Defendant Sun Capital Partners, Inc. ("Sun"), through an affiliate, entered into a certain stock purchase agreement with Honeywell International Inc. pursuant to which it acquired all of the outstanding capital stock of two operating entities, Indalex Inc. and Indalex Limited. The stock purchase transaction closed on February 2, 2006. Prior to the stock purchase transaction neither Sun nor any of its affiliates had a relationship with Indalex Inc. or Indalex Limited.

On March 20, 2009, Indalex Holdings Finance, Inc., Indalex Holding Corp., Indalex Inc., Caradon Lebanon, Inc. and Dolton Aluminum Company, Inc. (collectively, "Indalex" or the "Debtors") filed for bankruptcy protection under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* On July 20, 2009, this Court approved the sale of substantially all of Debtors' assets. As part of that sale agreement, Debtors changed their names to IH 1, Inc., etc. On October 30, 2009, these cases were converted to cases under Chapter 7.

On July 30, 2010, Trustee commenced this adversary proceeding against eight companies and 14 individuals to recover certain transfers and damages for breaches of fiduciary duties. The Complaint focuses on transactions following Sun's, or its affiliate's, leveraged buyout of the two operating companies, Indalex Inc. and Indalex Ltd. Sun, or its affiliates, came to control these acquired operating companies. Trustee alleges that the Defendants exercised this control to extract money from these entities, in the form of transaction fees, management fees, and improperly declared dividends. In addition, Trustee alleges that Defendants improperly characterized equity infusions in Debtors as secured loans.

The Complaint identifies the following Defendant entities as affiliates of Defendant Sun: Sun Indalex, LLC, Sun Indalex Finance LLC, Sun Capital Partners III, QP, LP, Sun Capital Partners IV, LP and

Sun Capital Partners Management III, LP. Two other Defendant companies, namely, Indalex Co–Investment, LLC and HIG Sun Partners, Inc., are not identified as affiliates of Sun, but rather are identified as shareholders of one of the Debtors. The 14 individual defendants are variously identified as officers, board members or managers of Debtors and/or Sun or affiliates of Sun.

Trustee has moved to disqualify Kirkland as counsel for the Defendants, based on pre-petition legal work Kirkland performed for Debtors. Trustee alleges that Kirkland represented Debtors on matters substantially related to the adversary proceeding, thus requiring disqualification under Model Rule of Professional Conduct 1.9 ("Model Rule 1.9"), which rule governs the practice of law before this Court. *In re Meridian Automotive Systems–Composite Operations, Inc.,* 340 B.R. 740, 744 (Bankr.D.Del.2006). Specifically, Trustee asserts that disqualification is appropriate based on Kirkland's services for Debtors concerning the dividend payment, the management services agreement, and the purported loans to Debtors.

Defendants oppose the motion to disqualify on the following five grounds: (i) Debtors had waived any potential conflict; (ii) Trustee's claims are not substantially related to Kirkland's work for Debtors; (iii) Trustee has not shown that Kirkland obtained any confidential information during its representation of Debtors; (iv) Trustee's delay in seeking disqualification waived any conflict; and (v) disqualification would unfairly prejudice Defendants and unfairly reward Trustee.

Briefing in this matter is complete, and the issue is ripe for decision and falls within this Court's jurisdiction as a core proceeding under 28 U.S.C. § 157(b)(2)(A). *In re Meridian,* 340 B.R. at 744.

**Discussion**

 Model Rule 1.9 provides the duties a lawyer owes to former clients. It provides that

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

This rule serves three purposes:

> First, it is a prophylactic rule to prevent even the potential that a former client's confidences and secrets may be used against him. Without such a rule, clients may be reluctant to confide completely in their attorneys. Second, the rule is important for the maintenance of public confidence in the integrity of the bar. Finally, and importantly, a client has a right to expect the loyalty of his attorney in the matter for which he is retained.

*In re Meridian,* 340 B.R. at 747 (quoting *In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 162 (3d Cir.1984)).

The issues presented here are (i) whether Trustee's adversary proceeding concerns matters that are substantially related to Kirkland's pre-petition representation of Debtors, and, if so, (ii) whether Debtors gave informed, written consent or (iii) whether Trustee has waived this ground for disqualification.

*Substantially Related*

 Comment 3 to Rule 1.9 clarifies what "substantially related" means:

> Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior

representation would materially advance the client's position in the subsequent matter.

That is, matters may be "substantially related" on two separate bases: (1) if they involve the same transaction or (2) if there is a risk that the attorney gained confidential, relevant information from the former client. *See In re Meridian,* 340 B.R. at 747 ("Thus, while the risk of a breach of client confidences is a sufficient condition for 'relatedness,' it is not a necessary one.").

Trustee's adversary proceeding focuses on a series of pre-petition transactions, including (i) a $76.6 million dividend payment, (ii) payment of management and transaction fees, and (iii) the granting of security interests. According to Kirkland's bills produced to Trustee, Kirkland performed legal services for Debtors relating to each of these three transactions.

Kirkland became counsel for Sun and its affiliates in February 2000 and Sun and its affiliates represent one of Kirkland's largest clients. (Doc. # 56, p. 1.) According to Trustee's calculations, Debtors paid legal fees to Kirkland in the amount of $1,666,000 during the period of 2006 through 2009.

Defendants contend that Kirkland's work for Debtors was not substantially related to Trustee's action. Defendants describe Kirkland's work on the dividend payment and the SEC disclosures as limited to their "technical" compliance with applicable laws and regulations. (Doc. # 54, pp. 21–22).

I find that Trustee has established that Kirkland's work for Debtors following the stock acquisition is substantially related to the issues in this adversary proceeding. Kirkland's legal bills to Debtors demonstrate that the firm had extensive dealings with Debtors. These dealings directly relate to the matters at issue in the adversary proceeding. A central claim in the adversary proceeding is that Debtors issued a $76.6 million dividend that rendered the operating Debtors insolvent. Payment of that dividend was justified on the basis of a solvency opinion prepared by FTI. Kirkland's billings reflect that Kirkland reviewed that solvency opinion and drafted the board resolution authorizing the dividend payment. Therefore, Trustee's causes of action concerning the dividend payment are substantially related to Kirkland's prior representation of Debtors.

Because the Court finds that the matters in this adversary proceeding are substantially related to the matters on which Kirkland had previously represented Debtors, it is not necessary for Trustee to identify any confidential information Kirkland obtained from this prior representation. Disqualification, therefore, is appropriate unless Debtors consented or Trustee has waived the grounds for disqualification.

*Consent*

Generally, a lawyer may litigate against a former client only with that client's "informed consent, confirmed in writing." Model Rule 1.9. " 'Informed consent' denotes the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." Model Rule 1.0(e).

A client may consent to conflicts, whether present or future, by signing a waiver. The effectiveness of a waiver depends on "the extent to which the client reasonably understands the material risks that the waiver entails." Model Rule 1.7, comment 22. General and open-ended waivers are generally not effective. *Id.* Comprehensive waivers are more likely to

be effective, as are those agreed to by sophisticated clients. *Id.*

▆ Defendants assert that Debtors gave their informed consent when they signed the Kirkland engagement letter on February 2, 2006. That engagement letter contains the following consent by Debtors:

> As you know, [Kirkland & Ellis] have represented and represent Sun Capital Partners, Inc., and its affiliated investment funds and management companies (together, "Sun") on a variety of matters, including Sun's investment in you and anticipate that we will represent Sun in future matters. You are a portfolio company of Sun. This confirms that [Kirkland] has informed you of its representation of Sun on a variety of matters, including Sun's investment in you, and that *you consent to, and waive any conflict or other objection with respect to [Kirkland's] representation of Sun, its affiliates or portfolio companies* in connection with any and all ... (iii) *future matters in which [Kirkland] might represent Sun.* ... In addition, you understand and agrees (sic) that in the event that [Kirkland] or Sun determine that any conflict exists in connection with [Kirkland's] representation of you, [Kirkland] may terminate its representation of you and continue its representation of Sun in any matter (whether or not such matter is related to the Indalex Matters). (Emphasis added.)

(Doc. # 44, Ex. 6.)

The consent is explicit and narrow, as it specifically identifies the possibility of future conflicts with Sun and its affiliates. It was signed by Michael E. Alger, the Chief Financial Officer of one of the Debtors at the time, whose declaration sufficiently demonstrates that he is a sophisticated business person with considerable experience in large businesses and who is knowledgeable about retaining counsel for those businesses. (Doc. # 55.) Accordingly, the consent is effective as to Kirkland's representation of Sun and its affiliates. This conclusion is consistent with that reached by Judge Gross in an unreported decision involving a similar motion to disqualify Kirkland, involving nearly identical waiver language. *The Official Committee of Unsecured Creditors of Mervyn's Holdings, LLC et al. v. Lubert–Adler Group IV, LLC et al.* No. 08–51402, slip op. at 13 (Bankr.D.Del. Oct. 1, 2009). There, Judge Gross found that the consent was sufficiently narrow because it was limited to future conflicts only with Sun companies. *Id.* As in that case, the consent is effective and Debtors have consented to Kirkland's representation of Sun companies in future disputes, including the present one.

The consent, however, is limited to Kirkland's "representation of Sun, its affiliates or portfolio companies." The consent language does not identify any individuals, such as officers and directors of Sun, its affiliates or Debtors. The consent, therefore, does not apply to the 14 individual Defendants. As alleged in the Complaint, the alleged wrongdoings of these individuals occurred during Kirkland's representation of Debtors and concerned matters substantially related to that representation, Kirkland is disqualified from representing the individual Defendants.

Two of the corporate Defendants, Indalex–Co Investment, LLC and HIG Sun Partners, Inc., are not identified in the Complaint as affiliates to Sun, but are simply identified as shareholders of one or more of Debtors. Thus, I conclude that the consent does not apply to these two entities.

*Waiver*

▆ Finally, valid grounds for disqualification may be deemed waived if the

former client fails to raise the issue promptly. *In re Kaiser Group International, Inc.,* 272 B.R. 846, 851–52 (Bankr. D.Del.2002). Courts may find waiver when there is an unreasonable delay in bringing a motion to disqualify, suggesting that the motion is being used as a litigation tactic. *Id.* at 852 (finding no reason for a four-month delay in moving to disqualify and concluding that the motion was "a strategic ploy"); In re Muma Services, Inc., 286 B.R. 583, 589 (Bankr.D.Del.2002) (finding that former client waived any conflict by delaying nearly one year in filing a motion to disqualify).

Here, Defendants complain that the motion was filed late in these proceedings and that this should be grounds for finding implied waiver. As part of the basis for this argument, Defendants contend that this adversary proceeding was contemplated first by the Official Committee of Unsecured Creditors (the "Committee") and then, following conversion to chapter 7, by Trustee. (Doc. # 54, pp. 26–29.) The Committee, who drafted a similar complaint, did not seek to disqualify Kirkland, and Trustee did not mention the disqualification issue during the parties' pre-complaint settlement negotiations. The Committee's actions and the Trustee's pre-complaint dealings with Sun, however, are not relevant. Trustee's actions following the filing of the Complaint are the focus of this analysis.

Trustee commenced the adversary proceeding on July 30, 2010. Defendants' answer was due on September 2, 2010, but the parties stipulated to extend that date. In discussing that extension, Trustee's counsel emailed Kirkland on August 16, 2010, stating that "although the Trustee is agreeing to the requested extension of time, this agreement should not be construed as his acquiescence to Kirkland representing any or all of the defendants in this action." (Doc. # 57, Ex. K.) Defendants filed their answer on October 18, 2010, and Trustee filed the motion to disqualify less than a month later. This is not an unreasonable amount of time, especially considering that Trustee had alerted Kirkland to the disqualification issue in August 2010. Accordingly, the Court finds that Trustee has not impliedly waived this disqualification argument.

### Conclusion

For the foregoing reasons, I will (1) deny Trustee's motion to disqualify Kirkland from representing Sun and its affiliates, (2) grant the motion as to Indalex Co–Investment, LLC and HIG Sun Partners, Inc. and (3) grant the motion as to the individual Defendants.

While Kirkland will have to exercise its own judgment on the issue, Kirkland may find itself in the awkward position of being a fact witness if Trustee elects to waive the attorney/client privilege as a chapter 7 trustee is entitled to do. *See Commodity Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 358, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Trustee's motion (Doc. # 43) to disqualify Kirkland & Ellis LLP from representing Defendants is (1) **denied** as to Sun Capital Partners, Inc. and its affiliates, (2) **granted** as to Defendants Indalex Co–Investment, LLC and HIG Sun Partners, Inc. and (3) **granted** as to the 12 individual Defendants.